# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ALONZO MACKLIN,

                Plaintiff,

      v.                             Case No. 04-C-536

DR. KELLY and
MICHAEL GIESE,

                Defendants.

---

## DECISION AND ORDER

Plaintiff Alonzo Macklin filed this <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983 concerning events that occurred while he was incarcerated at the Waukesha County Jail. Specifically, he alleges that defendants violated his rights under the Eighth and Fourteenth Amendments when they: (1) denied him adequate medical care; and (2) discriminated against him on the basis of his race. Before me are defendants' individual motions for summary judgment.

## I. BACKGROUND

On June 4, 2004, plaintiff filed a complaint pursuant to § 1983 alleging that defendants Waukesha County Jail and Waukesha County Jail Medical Department violated his constitutional rights. By order of August 12, 2004, plaintiff was granted leave to proceed <u>in forma pauperis</u>. However, defendants Waukesha County Jail and Waukesha County Jail Medical Department were dismissed because they are not suable entities. Consequently, plaintiff was ordered to file an amended complaint identifying the responsible individuals.

On September 16, 2004, plaintiff filed an amended complaint naming Dr. Kelly[1] and Michael Giese as defendants. However, the amended complaint referenced the original complaint and "failed to restate the factual basis of [plaintiff's] claims against defendants Kelly and Giese." (Order of September 22, 2004 at 17.) Thus, the court considered allegations presented in both complaints when permitting plaintiff to proceed on his medical care and equal protection claims.[2]

On May 9, 2005, defendants Kelly and Geise filed separate motions for summary judgment. Plaintiff was released from the Waukesha County Jail on January 27, 2006.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a

---

[1]Dr. Kelly has been identified as John E. Kelly, M.D.

[2]Plaintiff was allowed to prosecute his medical care claims under the Eighth Amendment. However, at the time of filing his complaint, plaintiff was a pretrial detainee at the Waukesha County Jail. Thus, he should have been allowed to proceed on a medical care claim under the Due Process Clause of the Fourteenth Amendment. Jackson v. Ill. Medi-Car, Inc., 300 F.3d 760, 764 (7th Cir. 2002). Regardless, Eighth and Fourteenth Amendment medical care claims are analyzed under the same legal standard. Whiting v. Marathon Co. Sheriff's Dep't, 382 F.3d 700, 703 (7th Cir. 2004) ("The distinction [between pretrial detainee and prisoner status] is immaterial since the legal standard for a § 1983 claim is the same under either the Cruel and Unusual Punishment Clause of the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment.").

Case 2:04-cv-00536-LA   Filed 03/31/06   Page 2 of 22   Document 104

verdict for the nonmoving party." Id.  For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit."  Id.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, Anderson, 477 U.S. at 255.  When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. Id. at 248.

The moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law.  Celotex Corp., 477 U.S. at 323.  Where the moving party seeks  summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence.  Id. at 325.  Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial.  Id. at 323-24.  Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable."  Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

3

### III. FACTS

**A.      Preliminary Matters**

The facts at issue must be established through documents that ensure reliability and veracity, such as depositions, answers to interrogatories, admissions and affidavits. Martz v. Union Labor Life Ins. Co., 757 F.2d 135, 138 (7th Cir. 1985). A prisoner plaintiff can demonstrate the veracity of a complaint by swearing under penalty of perjury that his statements are true. See 28 U.S.C. § 1746. If the complaint is sworn, it will be treated as an affidavit at the summary judgment stage. Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996). Submissions which are unverified and unsworn cannot be considered affidavits for the purposes of summary judgment motions because these documents would not be admissible at trial. See Fed. R. Civ. P. 56 (c) and (e).

In this case, plaintiff has filed sworn responses to defendants' summary judgment motions. However, plaintiff's filings, which purport to respond to the allegations presented in defendants' motions, are deficient in several respects. First, plaintiff has not responded to either defendant's proposed findings of fact as required by Civil L.R. 56.2 (E.D. Wis.). Second, plaintiff's responses discuss entirely unrelated matters, including his false arrest for a sexual assault, the ineffectiveness of his court appointed attorneys, and the conditions of confinement at Waukesha County Jail.[3]

In addition to his sworn responses, plaintiff has filed numerous pleadings reiterating

---

[3]I note that plaintiff has attached to his July 11, 2005 response to defendant Giese's motion for summary judgment copies of his Medication Profile (which lists the medication he received from April to December 2003) and copies of his X-Ray Reports (which indicate that in April 2005 his prosthesis was in a satisfactory position and that he suffers from osteoarthritis). Because these documents are attached to his sworn response, I will consider them in deciding defendants' summary judgment motions.

4

the allegations in his complaint. However, none of these filings has been sworn pursuant to 28 U.S.C. § 1746. Moreover, it is not clear that defendants have been served with copies of plaintiff's filings. Specifically, on December 20, 2005, I ordered that the clerk of court provide defendants with copies of all documents plaintiff filed with the court between November 30, 2004 and September 13, 2005. At that time I also warned plaintiff that from that point on any documents submitted to the court must be accompanied by proof of service on defendants. However, after issuance of the December 20, 2005 order, plaintiff then proceeded to send to the court at least three more packets of letters without serving defendants. For their part, defendants have asked me to disregard these filings.

For the above reasons, the facts in this section are taken from defendants' affidavits, plaintiff's verified complaint and verified amended complaint, and the attachments to plaintiff's July 11, 2005 sworn response to defendant Giese's summary judgment motion. See Ford, 90 F.3d at 247 (explaining that by declaring under penalty of perjury that the complaint was true, and by signing it, plaintiff converted factual assertions in complaint into an affidavit). This means that I will only address the claims (medical care and equal protection) plaintiff was permitted to prosecute by order of September 22, 2004. If plaintiff wishes to pursue other claims, he may do so by filing a new complaint under 42 U.S.C. § 1983.

**B.    Relevant Factual Background**

At all times relevant to this action, plaintiff was incarcerated at the Waukesha County Jail ("the jail"). (See Compl. at 1-10.)[4] Both defendants are employees of the jail.

_____

[4]The complaint, which starts on page three, is ten pages long. However, plaintiff's allegations are set forth in a five page letter that he has inserted into the middle of the

5

(Giese Aff. ¶I; Kelly Aff. ¶III.) Michael Giese is employed as the jail administrator and John E. Kelly, M.D. is the jail Medical Director. (Giese Aff. ¶I; Kelly Aff. ¶III.)

Plaintiff, who is an African American male, was arrested on February 20, 2004. (Frederick Aff. ¶¶10-11.)[5] Immediately upon his arrival at the jail, plaintiff was interviewed and given a complete medical screen to determine whether he was undergoing treatment with a doctor and whether he was currently taking any medications. (Id. ¶II.) At the time of his arrest, plaintiff was seeing several doctors for degenerative bone disease, arthritis, a knee replacement, shoulder surgery, deterioration of the discs in his back, migraine headaches, sleep apnea, high blood pressure, depression, and ear and sinus problems. (Compl. at V.)[6] However, during his initial interview, plaintiff only complained of suffering from arthritis, sinus problems, headaches, earaches, a torn rotator cuff, and a knee replacement. (Frederick Aff. ¶ III.)

It is disputed what medications plaintiff was taking at the time of his arrest in February 2004. (See Compl. at VII; Frederick Aff. ¶III.) According to plaintiff, he was receiving: (1) hydrocortisone injections; (2) Naproxen; and (3) "hydro/apap tab." (Compl.

---

complaint form. In the interest of simplicity, I will refer to the pages of the complaint in sequence, with the first page of the complaint being page number 1 and the last page of the complaint being page number 10. I will refer to plaintiff's exhibits as the "complaint exhibits."

[5]Elizabeth Frederick is the acting Health Service Administrator at the Waukesha County Jail. (Frederick Aff. ¶ 1.)

[6]Plaintiff submitted information indicating that from April 17 to December 30, 2003, Arthur Mines, a physician at Aurora Health Center, treated plaintiff for arthritis, depression, headaches, sinus problems, ear infections, and high blood pressure. (Pl.'s Resp. to Giese's Mot. for Summ. J. Exs.) Plaintiff was given Vioxx, Naprosyn and Vicodin for arthritis pain, Celexa and Trazodone for depression, Midrin for headaches, Rhinocort Aqua for his sinuses, Vosol HC for his ear infection, and Maxzide for high blood pressure. (Id.)

6

at VII.)  However, Aurora Pharmacy in Milwaukee could only confirm that plaintiff had one prescription, a blood pressure medication, on file. (Frederick Aff. ¶ III.)

According to jail policy, nurses make rounds of the jail twice a day to dispense medications to prisoners who require them.  (Frederick Aff. ¶ IV.)  During rounds, inmates may discuss with the nurse their medical concerns.  (Id.)  In addition, inmates may complete a "Request for Medical/Mental Health Care" form.  (Id.)  The purpose of the form is to lay out the prisoner's medical concerns.  (Id.)  Once completed, the form is sent to the nursing station, where the nurses attempt to address the prisoner's concerns in the form of a written response.  (Id.)  When a problem cannot be resolved via written response, or in the event the prisoner still has concerns, the prisoner will be seen by a nurse in sick call or in a clinic setting.  (Id.)

If, during the visit to sick call, a prisoner requests an in-person meeting with Dr. Kelly, jail policy requires that the prisoner be allowed to see him.  (Frederick Aff. ¶ V.)  Dr. Kelly recalls meeting with plaintiff on a face-to-face basis on five separate occasions. (Kelly Aff. ¶8.)  On one occasion, plaintiff complained of back and joint pain.  (Id.)  On the other occasions, plaintiff complained of "sinusitis, sleep apnea or his high blood pressure." (Id.)

After meeting with plaintiff, Kelly assembled medical records from every health care provider plaintiff was able to identify having seen prior to his incarceration.   (Kelly Aff. ¶8.) Subsequently, Kelly developed a plan of care for plaintiff which included: (1) HCTZ and Capoten to treat plaintiff's high blood pressure; (2) Indocin for back, shoulder, neck and

7

knee pain; and (3) Docusate for constipation.  (Frederick Aff. ¶12; Kelly Aff. ¶9.)[7]  In addition, Dr. Biehl, a Wisconsin Department of Justice psychiatrist, prescribed Lexapro and Trazadone to treat plaintiff's depression.  (Frederick Aff. ¶12; Kelly Aff. ¶9.) Also, on countless occasions between February 20 and April 27, 2005, plaintiff was given Tylenol, Motrin, Advil, Ibuprofen, Naproxin, Vicodin, Milk of Magnesia, Dulcolax, Lotrimin cream, Gualfensin, Rhinorcort Aqua, and hydrocortisone cream.  (See Compl. Exs.; Wirth Aff. Ex. E.)    Plaintiff has admitted that Advil helped his pain, but also complained that it made him constipated.  (Frederick Aff. ¶7.)

On an unknown date, plaintiff requested a cortisonal epidural injection for pain, which Dr. Kelly refused.  (Kelly Aff. ¶11.)  It is disputed whether Kelly had previously allowed another inmate to receive a cortisone injection. (Compl. at 7; Kelly Aff. ¶11.)  For his part, plaintiff contends that jail officials allowed "a white man to recieve (sic) injections at the nursing station." (Compl. at 7.)  In contrast, Kelly states that he has never given any prisoner a cortisone injection.  (Kelly Aff. ¶11.)  Instead, Kelly generally prescribes an anti-inflammatory.  (Id.)

During his incarceration, the jail nurses monitored plaintiff's movements, "including the manner in which he walked, stood up, sat down." (Frederick Aff. ¶6.) He was observed walking and running normally, sitting and standing with no obvious difficulty, and enjoying recreational activities on more than one occasion.  (Kelly Aff. ¶¶7, 14.)

Between February 20 and May 25, 2004, plaintiff filed at least forty Requests for Medical/Mental Health Care, complaining of back, shoulder, neck and knee pain, ringworm,

---

[7]Kelly discontinued plaintiff's prescription for Vicodin due to its inadvisability "in a setting such as the Waukesha County Jail."  (Kelly Aff. ¶ 9.)

8

constipation, headaches and high blood pressure.  (See Compl. Exs.)  He also filed at least eight Inmate Communication forms, requesting extra pillows, blankets, and a mattress, and complaining of arthritis pain, sleep apnea, sinus and ear problems, and depression.  (Id.) Defendant Giese, as the jail administrator, responded to plaintiff's grievances, and referred them to the appropriate staff for resolution.  (Giese Aff. ¶IV.) Giese states that he is not aware of any grievances filed by plaintiff that "have not received an appropriate response from the jail personnel."  (Giese Aff. ¶4.)  For his part, Dr. Kelly did not object to plaintiff's request for extra pillows and mattresses, but Dr. Kelly was not responsible for making such decisions. (Kelly Aff. ¶IV.)

On several occasions plaintiff filed a request for Medical/Mental Health Care, stating that he would refuse treatment unless he received a cortisone injection.  (Wirth Aff. Exs. A, B.)  On March 12, 2004, plaintiff filed an Inmate Communication Form, which provides in relevant part:

> I want to know how much my medical bill is after my cold med.  Because after that I am not seeing nurse or med.  Between the phone that I have to use to prove that I'm not guilty and the Med is too much over head and I must get out so sick or not I refuse any med I have to pay for.

(Wirth Aff. Ex. A.)

On April 5, 2005, plaintiff filed a Request for Medical/Mental Health Care Form, which provides in relevant part:

> You answer my request but you ask me did I want to be seen by your Dr. Only if he give me injection to the bone in my body.

(Wirth Aff. Ex. B.)

Case 2:04-cv-00536-LA   Filed 03/31/06   Page 9 of 22   Document 104

## IV. DISCUSSION

### A.    Exhaustion of Administrative Remedies

Within this circuit, a prisoner's failure to exhaust administrative remedies before bringing a § 1983 suit is an affirmative defense, which defendants must raise. Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999). The Prisoner Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Although defendants Kelly and Giese have filed separate motions for summary judgment, both defendants assert that plaintiff failed to exhaust his administrative remedies.  In addition, Dr. Kelly has incorporated into his brief arguments and information from defendant Giese's brief. (Kelly's Reply Br. in Supp. of Mot. for Summ. J. at 8) ("as pointed out in Dr. Kelly's primary brief (and in the brief filed on behalf of Mr. Giese), [plaintiff] failed to exhaust all necessary administrative remedies prior to filing this suit."). Moreover, all information concerning the Waukesha County Jail administrative grievance procedure is contained in defendant Giese's summary judgment motion and supporting materials.[8]  For these reasons, I will jointly address defendants' exhaustion arguments.

---

[8]Generally, courts look to the Wisconsin Administrative Code when determining what remedies were available to a prisoner. See Wis. Admin. Code § DOC 310.

10

Defendant Giese contends that plaintiff received appropriate responses to his complaints, while Kelly asserts that plaintiff never filed an inmate complaint. For his part, plaintiff submits that "he did all [he] can do" to complete the grievance process. (Compl. at I.)

Waukesha County Sheriff's Department/Jail Division Policy and Procedure 353.4 ("IMP 353.4") provides in relevant part:

> [i]nmates who feel they have legitimate grievances are encouraged to seek informal resolution. When an informal resolution is unfeasible, inmates may utilize a written grievance procedure. Each grievance is answered in a timely manner.
>
> **1) Appeal Levels.** The appeal and/or grievance process follows the Jail Division and Sheriff's Department chain of command. The chain of command and complaint procedure is outlined in the 'Inmate Rules, Regulations and Information Packet.' The packet is issued to all newly admitted inmates during the intake process. The first level of appeal is the line correctional officer and/or support staff member. The appeal process continues through the chain of command to the Office of the Sheriff.
>
> **2) Informal Resolution.** Correctional Officers will resolve grievances informally with the inmates whenever possible.
>
> **3) Written Grievance.** When attempts toward informal resolution prove unsuccessful, correctional officers will advise inmates regarding the written grievance system and, depending upon the nature of the grievance, will further advise as to the appropriate level of appeal. Grievances may be made in confidence and sealed communications will be delivered unopened.
>
> **4) Record.** The staff member receiving the grievance will answer it within 48 hours of receipt, excluding weekends and holidays. The answer is to be based on facts, dealing only with the specific issues that were raised. Following each level of appeal, a record of both the grievance and response

_____

Specifically, the Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). However, pretrial detainees cannot use ICRS because it only applies to inmates confined in state correctional facilities. See Wis. Admin. Code § 310.02.

will be made by incorporating the inmate's written communications and applicable staff member's response into the inmate's assigned incarceration file.

(Geise Aff. Ex. A at 1.)

At the outset, I note that failure to exhaust administrative remedies is an affirmative defense and defendants bear "the burden of pleading and proving that the plaintiff has failed to exhaust administrative remedies." See Massey, 196 F.3d at 734. Thus, contrary to Giese's assertion that plaintiff has failed to prove exhaustion, it is instead defendants' burden to show that plaintiff failed to avail himself of the jail's administrative remedies.

The purpose of the exhaustion requirement is to allow prison officials the opportunity to respond to complaints internally before an inmate initiates litigation. Porter, 534 U.S. at 524-25; see Smith v. Zachary, 255 F.3d 446, 450-51 (7th Cir. 2001). To provide officials with sufficient notice, inmates must file grievances at the place and time and with the information required by the prison's administrative rules. Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002). Where the rules are silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." Id. at 650; see Riccardo v. Rausch, 375 F.3d 521, 524 (7th Cir. 2004), cert. denied, 125 S. Ct. 1589 (2005).

In this case, IMP 353.4 is silent as to how jail inmates are expected to file their administrative complaints and appeals. Although IMP 353.4 provides that grievances will be responded to in a timely manner, it does not explain how long an inmate has to file a timely complaint or appeal. Moreover, there is no indication as to what forms should be used and with whom complaints and appeals should be filed.[9] Accordingly, it is difficult, if

---

[9]In contrast, the Wisconsin Administrative Code provides that inmates shall file inmate complaints within fourteen calendar days "after the occurrence of the event giving

not impossible for me to determine whether plaintiff filed his grievances at the time and place the jail rules required. See Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002) (stating that a prisoner must file complaints in the place, and at the time, the prison's administrative rules require).

Moreover, it appears that Dr. Kelly and defendant Giese were alerted to the nature of the redress plaintiff sought. It is undisputed that plaintiff filed at least forty Requests for Medical/Mental Health Care, complaining of back, shoulder, neck and knee pain, ringworm, constipation, headaches and high blood pressure. In addition, he filed at least eight Inmate Communication Forms requesting extra pillows, blankets, and a mattress, and complaining of arthritis pain, sleep apnea, sinus and ear problems, and depression. As the jail administrator, Giese responded to plaintiff's grievances and made referrals when appropriate. As the jail medical director, Dr. Kelly treated plaintiff for his complaints of back, shoulder, neck and knee pain, constipation, headaches and high blood pressure, denied plaintiff's request for a cortisone injection, and indicated his willingness to allow plaintiff extra pillows and mattresses. Thus, I find that defendants Giese and Kelly were alerted to the nature of the relief plaintiff sought. See Riccardo, 375 F.3d at 524 (stating that when the rules are silent, a grievance suffices if it alerts the prison to the nature of the complaint).

Dr. Kelly contends that "there is no evidence to suggest that [plaintiff] ever filed a grievance as required by statute and by the case law interpreting that statute." (Kelly's Br.

---

rise to the complaint," Wis. Admin. Code § DOC 310.09(6), and inmates may appeal adverse decisions within ten calendar days to the corrections complaint examiner on forms supplied for that purpose, Wis. Admin. Code §310.13.

in Supp. of M. for Summ. J. at 16.)  However, it is undisputed that plaintiff filed at least eight Inmate Communication Forms, complaining of, among other things, arthritis pain, sleep apnea, sinus and ear problems, and depression. Kelly has not addressed these forms, nor has he explained why they do not constitute a "grievance" for exhaustion purposes.

In light of the foregoing, defendants have not demonstrated that plaintiff failed to exhaust his administrative remedies.  Moreover, based on the litany of grievances plaintiff filed, defendants had notice of the redress plaintiff sought.  Riccardo, 375 F.3d at 524; Strong, 297 F.3d at 649.  Accordingly, I will now address the merits of plaintiff's claims.

## B.	Eighth Amendment Medical Care Claims

The Supreme Court has interpreted the Eighth Amendment's proscription against cruel and unusual punishment as imposing a duty upon the states "to provide adequate medical care to incarcerated individuals."  Boyce v. Moore, 314 F.3d 884, 888-89 (7th Cir. 2000).  To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety.  Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Ill., 220 F.3d 805, 810 (7th Cir. 2000).[10]

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily

_____

[10]As noted in n.2, supra, the standard for pre-trial detainees such as plaintiff is the same.

14

recognize the necessity for a doctor's attention." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (internal quote marks omitted). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. See Reed v. McBride, 178 F.3d 849, 852-53 (7th Cir. 1999); Gutierrez, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. In the context of medical professionals, neither medical malpractice, negligence nor even gross negligence equates to deliberate indifference. See Dunigan ex. rel. Nyman v. Winnebago County, 165 F.3d 587, 592 (7th Cir. 1999). To this extent, mere dissatisfaction or disagreement with a doctor's course of treatment is also not a sufficient basis for liability. Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996).

Here, it is undisputed that plaintiff suffered from the following: 1) high blood pressure; 2) back, shoulder, neck and knee pain; 3) constipation; and 4) depression. Moreover, prior to his incarceration, a physician found that plaintiff's high blood pressure, arthritis pains, and depression were worthy of treatment. Specifically, plaintiff's Medication Profile shows that he was given three types of medications for arthritis pain, two different medications for his depression, and one medication for his high blood pressure.

15

Furthermore, during his incarceration, plaintiff was treated by Dr. Kelly for his high blood pressure and arthritis pain.[11]  Accordingly, plaintiff has established a serious medical need.

### 1.    Defendant Kelly

Dr. Kelly asserts that he is entitled to summary judgment because plaintiff's claims amount to a disagreement over medical treatment, and because plaintiff refused medical treatment on several occasions.[12]

It is undisputed that Dr. Kelly treated plaintiff's high blood pressure, and back, shoulder, neck and knee pain.  For his high blood pressure, plaintiff was given HCTZ and Capoten.  For back, shoulder, neck and knee pain, he was given Indocin.  In addition, plaintiff was given myriad medications by either Dr. Kelly or Dr. Kelly's nursing staff, including Advil, Motrin and Ibuprofen.  Plaintiff has admitted that Advil helped his pain, but made him constipated.

Plaintiff's assertion that Dr. Kelly should have given plaintiff a cortisone injection instead of treating plaintiff with Indocin[13] is not of constitutional import.  It is well established that disagreement with medical professionals about medical treatment does not state a

---

[11]Dr. Biehl, who is not a named defendant, treated plaintiff for depression.  Biehl supplied plaintiff with prescriptions for Lexapro and Trazadone.

[12]Dr. Kelly also contends that plaintiff cannot prevail on a claim of medical negligence because plaintiff has not submitted evidence that the care provider failed to meet the applicable standard of care.  However, it is well established that neither negligence, gross negligence nor medical malpractice are actionable under § 1983.  See Dunigan,165 F.3d at 592.

[13]Indocin is a non-steroidal drug with anti-inflammatory properties.  It has shown to be an effective anti-inflammatory agent, appropriate for long-term use in rheumatoid arthritis, ankylosing spondylitis, and osteoarthritis.  Physicians' Desk Reference 1986 (6th ed. 2006).

16

cognizable Eighth Amendment claim under the deliberate indifference standard of Estelle v. Gamble, 429 U.S. 97 (1976). Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003). Indeed, under the Eighth Amendment, prisoners are not entitled to demand specific care. See Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997).

Moreover, plaintiff refused medical treatment on several occasions. During March 2004 and April 2005, plaintiff stated that he did not want to see a physician unless he received a cortisone injection. Accordingly, plaintiff is not now entitled to claim that he was denied access to adequate medical care during these times. See McNeil v. Redman, 21 F. Supp. 2d 884, 887 (C.D. Ill. 1998) (holding that because plaintiff refused to see physician, he waived any challenge to the denial of access to medical treatment).

Finally, plaintiff avers that he should have been given additional pillows and a mattress. It is undisputed that Dr. Kelly did not object to plaintiff receiving extra pillows and mattresses. Regardless, plaintiff has no constitutional right to have additional mattresses, Landfair v. Sheahan, 878 F. Supp. 1106, 1112 (7th Cir. 1995), and he cannot expect the amenities of a good hotel, Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988). Accordingly, plaintiff has failed to establish that Dr. Kelly was deliberately indifferent to his serious medical needs.

### 2. Defendant Giese

Defendant Giese contends that the claims against him should be dismissed for lack of personal involvement. In the area of medical care, prison officials who are not physicians themselves are entitled to defer to the medical judgment of staff physicians. See Perkins v. Lawson, 312 F.3d 872, 875-76 (7th Cir. 2002). An administrator does not become responsible for a doctor's exercise of medical judgment simply by virtue of

17

reviewing an inmate grievance. See Greeno v. Daley, 414 F.3d 645, 655-56 (7th Cir. 2005).

Recently, the Seventh Circuit addressed the liability of non-medical personnel in Eighth Amendment medical care claims, finding that:

> "If a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor . . . Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."

Johnson v. Doughty, 433 F.3d 1001, 1010 n.9 (7th Cir. 2006) (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)).

It is undisputed that Giese is the jail administrator, and that he is not a medical professional. Giese responded to plaintiff's grievances, referred plaintiff's grievances to the appropriate staff for resolution, and therefore he knew of plaintiff's complaints concerning medical treatment and discrimination. However, decisions regarding the course of plaintiff's medical treatment were under the sole purview of defendant Kelly. It has been established that Dr. Kelly was not deliberately indifferent to plaintiff's serious medical needs. Accordingly, the facts do not justify a finding that defendant Giese was deliberately indifferent to plaintiff's serious medical needs.

## C.     Fourteenth Amendment Equal Protection Claims

Governmental entities are generally required to treat all similarly situated persons in a similar manner. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439

18

(1985). To show an equal protection violation, a plaintiff must prove that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 272-74 (1979); Washington v. Davis, 426 U.S. 229, 242 (1976).

A plaintiff may demonstrate that the defendants' actions had a discriminatory effect by showing that he is a member of a protected class, that he is similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class. Greer v. Amesqua, 212 F.3d 358, 370 (7th Cir. 2000). Once a discriminatory effect has been established, a plaintiff must prove that defendants "selected or reaffirmed a particular course of action at least in part because of its adverse effects upon an identifiable group." Chavez v. Ill. State Police, 251 F.3d 612 (7th Cir. 2001). Negligence on the defendants' part will not suffice to meet the "discriminatory purpose" requirement. Schroeder v. Hamilton Sch. Dist., 282 F.3d 946, 951 (7th Cir. 2002).

### 1. Dr. Kelly

Dr. Kelly concedes that, as an African-American, plaintiff is a member of a protected class. However, Kelly asserts that plaintiff has failed to show that he was treated differently from members of the unprotected class. In particular, Kelly contends that he has never given any inmate a cortisone injection.

Although courts have been careful not to define the requirement that plaintiff be similarly situated to members of an unprotected class too narrowly, Chavez, 251 F.3d at 636 (citing Freeman v. Madison Metro. Sch. Dist., 231 F.3d 374, 382-83 (7th Cir. 2000)), here, the factual record does not support a finding that plaintiff is similarly situated to the white inmate who allegedly received a cortisone injection. Specifically, other than stating

19

that the other inmate was white, plaintiff has provided no admissible evidence about his fellow inmate, such as his name, medical condition or the circumstances surrounding the alleged injection. Such unsupported allegations of racial animus are insufficient to maintain an equal protection claim. Samuel v. City of Chicago, 41 F.Supp. 2d 801, 805 (N.D. Ill. 1999). Moreover, plaintiff presents no evidence refuting Dr. Kelly's assertion that Kelly has never given any inmate a cortisone injection. Accordingly, plaintiff cannot show that he was treated differently than a member of the unprotected class. Hedrich v. Bd. of Regents of the Univ.of Wis. Sys., 274 F.3d 1174, 1183 (7th Cir. 2001) (stating that plaintiff is required to submit evidence that defendants treated him different from the unprotected class). In light of the foregoing, plaintiff has not demonstrated the Dr. Kelly's refusal to administer the cortisone injection had a discriminatory effect.

However, even if plaintiff could prove the he experienced a discriminatory effect, his equal protection claim against Dr. Kelly should be dismissed because plaintiff has not shown that Dr. Kelly acted with a discriminatory purpose. As noted, Dr. Kelly chose to treat plaintiff's joint pain with Indocin instead of administering a cortisone injection. Plaintiff has submitted no evidence that Dr. Kelly's more conservative course of treatment was chosen because Dr. Kelly wanted to inflict pain upon plaintiff due to plaintiff's race. See Schroeder, 282 F.3d at 950 (stating that in order to state an equal protection violation, plaintiff must show that defendant intentionally treated him differently because of his membership in the class to which he belonged). Accordingly, plaintiff has failed to establish a constitutional violation.

### 2.    Defendant Giese

Defendant Giese asserts that the claim against him should be dismissed for lack of

20

personal involvement. It is well settled that §1983 does not create a claim based on collective or vicarious responsibility. See Pacelli v. deVito, 972 F.2d 871, 875 (7th Cir. 1992). Therefore, to establish a § 1983 claim a plaintiff has to show that the individual defendant was responsible for the alleged constitutional deprivations. See Antonelli v. Sheahan, 81 F.3d 1422, 1428 (7th Cir. 1996); Neitzke v. Williams, 490 U.S. 319 (1989)). An official is personally involved if: a) he participates directly in the constitutional deprivation; b) acts or fails to act with reckless disregard of the plaintiff's constitutional rights; or c) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his or her knowledge and consent. Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986); Smith v. Rowe, 761 F.2d 360, 369 (7th Cir. 1985); Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982).

In this case, plaintiff's equal protection rights were not violated when Dr. Kelly refused to give him a cortisone injection. Thus, plaintiff cannot show that defendant Giese was personally involved in a deprivation of plaintiff's constitutional rights. Rascon, 803 F.2d at 274. Accordingly, I will grant defendant Giese's motion for summary judgment on plaintiff's equal protection claim.

### V. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant John E. Kelly's motion for summary judgment (Docket # 61) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Michael Giese's motion for summary judgment (Docket # 69) is **GRANTED**.

**FINALLY, IT IS ORDERED** that this case is **DISMISSED** and the Clerk of Court

shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31 day of March, 2006.


/s_____
LYNN ADELMAN
District Judge

Case 2:04-cv-00536-LA   Filed 03/31/06   Page 22 of 22   Document 104